COPY

1   BORIS FELDMAN, State Bar No. 128838 (boris.feldman@wsgr.com)
    IGNACIO E. SALCEDA, State Bar No. 164017 (isalceda@wsgr.com)
2   WILSON SONSINI GOODRICH & ROSATI
    Professional Corporation
3   650 Page Mill Road
    Palo Alto, CA 94304-1050
4   Telephone:  (650) 493-9300
    Facsimile:  (650) 565-5100
5
    Attorneys for Defendant
6   Michael R. Hallman

*ADR*

*E-FILING*

**ORIGINAL FILED**

SEP 2 9 2006

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

7

8                          UNITED STATES DISTRICT COURT

9                       NORTHERN DISTRICT OF CALIFORNIA

10  WILLIAM G. SCLAFANI, Derivatively On       CASE NO.:   **C 06  06109  JW  HRL**
    Behalf of Nominal Defendant INTUIT, INC.,
11                                               )
                                                 )  NOTICE OF REMOVAL TO THE
12           Plaintiff,                          )  UNITED STATES DISTRICT COURT
                                                 )  FOR THE NORTHERN DISTRICT OF
13           vs.                                 )  CALIFORNIA UNDER 28 U.S.C.
                                                 )  § 1441(a)
14  GREGORY J. SANTORA, SCOTT D. COOK,          )
    RAYMOND J. STERN, RICHARD W. IHRIE,         )
15  LORRIE M. NORRINGTON, ROBERT B.             )
    HENSKE, JAMES J. HEEGER, ERIC C.W.          )
16  DUNN, CHRISTOPHER W. BRODY,                 )
    MICHAEL R. HALLMAN, DONNA L.                )
17  DUBINSKY, WILLIAM V. CAMPBELL, L.           )
    JOHN DOERR, DENNIS D. POWELL,               )
18  STEPHEN M. BENNETT;                         )
                                                 )
19           Defendants,                         )
                                                 )
20           - and -                             )
                                                 )
21  INTUIT, INC.,                               )
                                                 )
22           Nominal Defendant.                  )
                                                 )
23

24          PLEASE TAKE NOTICE that defendant Michael R. Hallman, a Washington citizen,

25  hereby removes to this Court the state court action described below:

26          1.      On September 26, 2006, an action was commenced in the Superior Court for the

27  County of Santa Clara, entitled *W. Sclafani v. S. Bennett, et al.*, as Case No. 1-06-CV-071833.  A

28  copy is attached as Exhibit A.

NOTICE OF REMOVAL                          -1-                                    2961758_1

1      2.      Defendant Michael R. Hallman appeared and accepted service of process in this

2   action.  A copy of the notice is attached as Exhibit B.

3      3.      This action is a civil action of which this Court has original jurisdiction under 28

4   U.S.C. § 1332, and is one which may be removed to this Court pursuant to the provisions of 28

5   U.S.C. § 1441(a) in that it is a civil action wherein the amount in controversy exceeds the sum of

6   $75,000, exclusive of interest and costs, and is between citizens of different states.

7      4.      Plaintiff's complaint does not allege an amount of damages but defendant is

8   informed and believes that the amount at issue exceeds the jurisdictional minimum of this Court.

9      5.      At the time of the filing of this action, Michael R. Hallman was, and still is, a

10  citizen of the State of Washington.

11     6.      The complaint does not identify plaintiff's citizenship.  Defendant is informed and

12  believes that plaintiff is a citizen of Pennsylvania, a state where no defendant resides.

13  Accordingly, complete diversity of citizenship exists.

14     7.      Defendant is informed and believes that none of the other defendants have been

15  served in this action.  *See* 28 U.S.C. § 1441(b) (diversity action is removable only if none of the

16  "parties in interest properly joined and *served* as defendants is a citizen of the State in which

17  such action is brought.") (emphasis added); *Republic Western Insurance Co. v. Oxford Property*

18  *& Cas. Ins. Co.*, 765 F. Supp. 628 (N.D. Cal. 1991) (holding removal proper where out-of-state

19  defendant removed before local defendant was served).

20     8.      Accordingly, all of the requirements of 28 U.S.C. § 1332 are present and less than

21  30 days have elapsed between service of this suit and this Notice of Removal as is required by 28

22

23

24

25

26

27

28

1  U.S.C. § 1446(b), therefore this action may properly be removed to this Court under 28 U.S.C.

2  § 1441(a).

3

4                                          Respectfully submitted,

5  Dated: September 28, 2006              WILSON SONSINI GOODRICH & ROSATI
                                           Professional Corporation
6                                          650 Page Mill Road
                                           Palo Alto, CA 94304-1050
7

8                                          By: _____
                                               Ignacio Salceda
9
                                           Attorneys for Defendant
10                                         Michael R. Hallman

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

1   Timothy J. Burke (181866)
    service@ssbla.com
2   STULL, STULL & BRODY
    10940 Wilshire Boulevard
3   Suite 2300
    Los Angeles, CA  90024
4   Tel:    (310) 209-2468
    Fax:    (310) 209-2087
5
    Jules Brody
6   Aaron L. Brody
    STULL, STULL & BRODY
7   6 East 45th Street
    New York, NY 10017
8   Tel:    (212) 687-7230
    Fax:    (212) 490-2022
9
    Counsel for Plaintiffs
10

11              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

12                **COUNTY OF SANTA CLARA**        FILE VIA FAX

13   WILLIAM G. SCLAFANI, Derivatively on      )   CASE NO. **1 0 6 C V 0 7 1 8 3 3**
     Behalf of Nominal Defendant INTUIT INC.,  )
14                                             )   **SHAREHOLDER DERIVATIVE**
                          Plaintiffs,          )   **COMPLAINT**
15                                             )
                  v.                           )
16                                             )   **JURY TRIAL DEMANDED**
     STEPHEN M. BENNETT,                       )
17   GREGORY J. SANTORA,                       )
     SCOTT D. COOK,                            )
18   RAYMOND J. STERN,                         )
     RICHARD W. IHRIE,                         )
19   LORRIE M. NORRINGTON,                     )
     ROBERT B. HENSKE,                         )
20   JAMES J. HEEGER,                          )
     ERIC C. W. DUNN,                          )
21   CHRISTOPHER W. BRODY,                     )
     MICHAEL R. HALLMAN,                       )
22   DONNA L. DUBINSKY,                        )
     WILLIAM V. CAMPBELL,                      )
23   L. JOHN DOERR, and                        )
     DENNIS D. POWELL,                         )
24                                             )
                          Defendants,          )
25                                             )
                  and                          )
26                                             )
     INTUIT INC.,                              )
27                                             )
                          Nominal Defendant.   )
28   _____  )

**SHAREHOLDER DERIVATIVE COMPLAINT**

UCS

FILED  Santa Clara Co
09/26/06   1:17pm
Kiri Torre
Chief Executive Offic
By: Jeromed dtsclerk
R#200600095658
CK                 $870.00
TL                 $870.00
Case: 1-06-CV-071833

Plaintiff, by his attorneys, submits this Derivative Complaint (the "Complaint") against the defendants named herein. This complaint is based upon plaintiff's personal knowledge as to himself and his activities, and upon information and belief as to the activities of others. Plaintiff hereby alleges as follows:

## NATURE AND SUMMARY OF THE ACTION

1.        This is a shareholder's derivative action brought for the benefit of nominal defendant Intuit Inc. ("Intuit" or the "Company") against certain members of its Board of Directors (the "Board") and certain of its executive offers seeking to remedy defendants' breaches of fiduciary duties, unjust enrichment, and other violations of law.

2.        In gross breach of their fiduciary duties as officers and/or directors of Intuit, the Individual Defendants (as defined herein) colluded with one another to:

a.        improperly backdate dozens of grants of Intuit stock options to Intuit President and Chief Executive Officer Stephen M. Bennett ("Bennett") and several other Intuit executives, in violation of the Company's shareholder-approved stock option plans;

b.        improperly record and account for the backdated stock options, in violation of Generally Accepted Accounting Principles;

c.        improperly take tax deductions based on the backdated stock options, in violation of Section 162(m) of the Tax Code;

d.        produce and disseminate to Intuit shareholders and the market false financial statements and other SEC filings that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options.

3.        As a result of the Individual Defendants' egregious misconduct, Intuit has sustained millions of dollars in damages, and Bennett and the other recipients of the backdated stock options have garnered millions of dollars in unlawful profits.

## PARTIES

4.        Plaintiff William G. Sclafani first became a shareholder in nominal defendant Intuit in July of 1997, and has continued to hold shares from that date until the present.

2

SHAREHOLDER DERIVATIVE COMPLAINT

1    5.    Nominal defendant Intuit is a Delaware corporation with its principal executive

2  offices located at 2700 Coast Avenue, Mountain View, California 94043. According to its public

3  filings, Intuit is a leading provider of business and financial management solutions for small- and

4  mid-sized businesses, consumers and accounting professionals.

5    6.    Defendant Bennett has served as the Company's President and Chief Executive

6  Officer and as a director since January 2000. Upon information and belief, Bennett is a citizen of

7  the state of California.

8    7.    Defendant Gregory J. Santora ("Santora") served as the Company's Chief Financial

9  Officer and Senior Vice President from 1997 to December 2002. Upon information and belief,

10  Santora is a citizen of the state of California.

11    8.    Defendant Scott D. Cook ("Cook"), a founder of Intuit, has served as a director of

12  Intuit since March 1984 and has served as Chairman of the Executive Committee of the Board since

13  August 1998. Cook also served as Intuit's Chairman of the Board from March 1993 through July

14  1998. From March 1984 to April 1994, Cook also served as President and Chief Executive Officer

15  of Intuit. Upon information and belief, Cook is a citizen of the State of California.

16    9.    Defendant Raymond J. Stern ("Stern") served as the Company's Senior Vice

17  President, Strategy and CMO from 2004 to 2005, and had been employed in various capacities in

18  the Company since 1998. Upon information and belief, Stern is a citizen of the state of California.

19    10.    Defendant Richard W. Ihrie ("Ihrie") has served as the Company's Senior Vice

20  President and Chief Technology Officer since November 2000. Upon information and belief, Ihrie

21  is a citizen of the state of California.

22    11.    Defendant Lorrie M. Norrington ("Norrington") served as the Company's Executive

23  Vice President, Office of the CEO from January 2002 to June 2005, and as Senior Vice President of

24  Intuit's small business division from August 2001 to January 2002. Upon information and belief,

25  Norrington is a citizen of the state of California.

26    12.    Defendant Robert B. Henske ("Henske") has served as the Company's Chief

27  Financial Officer and Senior Vice President since January 2003. Upon information and belief,

28  Henske is a citizen of the state of California.

3

13.    Defendant James J. Heeger ("Heeger") has served as the Company's Senior Vice President and General Manager of the Company's Small Business Division from July 1997 to June 2000. Heeger also served as Chief Financial Officer and Senior Vice President of Administration from April 1995 to July 1997, and as Vice President and General Manager of Supplies Division from December 1993 to April 1995. Upon information and belief, Heeger is a citizen of the state of California.

14.    Defendant Eric C.W. Dunn ("Dunn") served in various capacities with the Company from 1986 to 2000, including Chief Financial Officer and Senior Vice President and Chief Technology Officer. Upon information and belief, Dunn is a citizen of the state of California.

15.    Collectively, defendants Bennett, Santora, Cook, Stern, Ihrie, Norrington, Heeger, Dunn and Hensks are referred to herein as the "Officer Defendants."

16.    Defendant Christopher W. Brody ("Brody") has served as a director of Intuit since 1993. Brody has also served as a member of the Compensation Committee of the Board (the "Compensation Committee") since December 2000 and as a member of the Audit Committee of the Board (the "Audit Committee") since at least 1996. Upon information and belief, Brody is a citizen of the State of California.

17.    Defendant Michael R. Hallman ("Hallman") has served as a director of Intuit since 1993. Hallman has also served as a member of the Compensation Committee since at least 1996, and as a member of the Audit Committee since August 2000. Upon information and belief, Hallman is a citizen of the state of California.

18.    Defendant William V. Campbell ("Campbell") has served as a director of Intuit since 1994, and as Chairman of the Board since August 1998. Campbell served in a non-voting advisor capacity on the Compensation Committee from August 1998 to July 2002. Campbell also served as the Company's Acting Chief Executive Officer from September 1999 until January 2000, and the Company's President and Chief Executive Officer from April 1994 through July 1998. Upon information and belief, Campbell is a citizen of the state of California.

19.    Defendant L. John Doerr ("Doerr") has served as a director of Intuit since August 1990. Doerr also served as a member of the Compensation Committee from April 1996 through

1   July 1998, and from September 1998 through January 1999. Upon information and belief, Doerr is

2   a citizen of the state of California.

3        20.    Collectively, defendants Brody, Hallman, Campbell and Doerr are referred to herein

4   as the "Compensation Committee Defendants."

5        21.    Defendant Donna L. Dubinsky ("Dubinsky") has served as a director of Intuit since

6   1999. Dubinsky has also served as a member of the Audit Committee since August 2000. Upon

7   information and belief, Dubinsky is a citizen of the state of California.

8        22.    Defendant Dennis D. Powell ("Powell") has served as a director of Intuit and as

9   Chairman of the Audit Committee since August 2004. Upon information and belief, Powell is a

10   citizen of the state of California.

11        23.    Collectively, defendants Brody, Dubinsky, Hallman, and Powell are referred to

12   herein as the "Audit Committee Defendants."

13        24.    Collectively, the Officer Defendants, Compensation Committee Defendants, and the

14   Audit Committee Defendants are referred to herein as the "Individual Defendants."

15                   **DUTIES OF THE INDIVIDUAL DEFENDANTS**

16        25.    By reason of their positions as officers and/or directors of the Company and because

17   of their ability to control the business and corporate affairs of the Company, the Individual

18   Defendants owed the Company and its shareholders the fiduciary obligations of good faith, trust,

19   loyalty, and due care, and were and are required to sue their utmost ability to control and manage the

20   Company in a fair, just, honest, and equitable manner. The Individual Defendants were are required

21   to act in furtherance of the best interests of the Company and its shareholders so as to benefit all

22   shareholders equally and not in furtherance of their personal interest or benefit. Each director and

23   officer of the Company owes to the Company and its shareholders the fiduciary duty to exercise

24   good faith and diligence in the administration of the affairs of the Company and in the use and

25   preservation of its property and assets, and the highest obligations of fair dealing.

26        26.    The Individual Defendants, because of their positions of control and authority as

27   directors and/or officers of the Company, were able to and did, directly and/or indirectly, exercise

28   control over the wrongful acts complained of herein.

5

SHAREHOLDER DERIVATIVE COMPLAINT

27.   To discharge their duties, the officers and directors of the Company were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the officers and directors of the Company were required to, among other things:

    a.   exercise good faith in ensuring that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

    b.   exercise good faith in ensuring that the Company was operated in a diligent, honest and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, including acting only within the scope of its legal authority;

    c.   exercise good faith in supervising the preparation, filing and/or dissemination of financial statements, press releases, audits, reports or other information required by law, and in examining and evaluating any reports or examinations, audits, or other financial information concerning the financial condition of the Company;

    d.   exercise good faith in ensuring that the Company's financial statements were prepared in accordance with Generally Accepted Accounting Principles ("GAAP"); and

    e.   refrain from unduly benefitting themselves and other Company insiders at the expense of the Company.

28.   The Individual Defendants were responsible for maintaining and establishing adequate internal accounting controls for the Company and to ensure that the Company's financial statements were based on accurate financial information. According to GAAP, to accomplish the objectives of accurately recording, processing, summarizing, and reporting financial data, a corporation must establish an internal accounting control structure. Among other things, the Individual Defendants were required to:

    (1)   make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer; and

6

SHAREHOLDER DERIVATIVE COMPLAINT

1    (2)  devise and maintain a system of internal accounting controls sufficient

2    to provide reasonable assurances that:

3      (a)  transactions are executed in accordance with management's

4        general or specific authorization;

5      (b)  transactions are recorded as necessary to permit preparation of

6        financial statements in conformity with [GAAP].

7   29.  Intuit's Audit Committee Charter provides that the Audit Committee shall be

8 responsible for, among other things:

9    a.  Reviewing, prior to releasing to the public, the type of financial information,

10 and the presentation of that information, to be included in the Company's annual earnings releases,

11 as well as the annual financial statements to be included in the Company's Form 10-Ks. This

12 review shall include a discussion of the matters required to be addressed by SAS 61, including

13 (1) discussions with management and the independent auditors concerning any significant issues

14 regarding accounting principles, practices and judgments (including any changes in accounting

15 principles), and (2) discussions with the independent auditors' concerning their judgments about the

16 quality and appropriateness of the Company's accounting principles as applied in its financial

17 reporting;

18    b.  Performing similar reviews with respect to the Company's Form 10-Qs and

19 quarterly earnings press releases; and

20    c.  In connection with the Committee's review of the quarterly and annual

21 financial statements, discussing with management and the independent auditors the Company's

22 selection, application and disclosure of critical accounting policies, any significant changes in the

23 Company's accounting policies and any proposed changes in accounting or financial reporting that

24 may have a significant impact on the Company;

25    d.  In connection with the Company's review of the annual financial statements,

26 obtaining and reviewing a report from the independent auditors addressing: (1) all critical

27 accounting policies and practices used, (2) all alternative treatments of financial information within

28 generally accepted accounting principles that have been discussed with management, the

7

**SHAREHOLDER DERIVATIVE COMPLAINT**

1  ramifications of each alternative and the treatment preferred by the independent auditors, and (3)

2  other material communications between the independent auditors and management, such as any

3  management, such as any management letter or schedule of unadjusted differences; and

4        e.     Recommending to the Board whether the annual financial statements should

5  be included in the Annual Report on Form 10-K, based on (1) the Committee's review and

6  discussion with management of the annual financial statements, (2) the Committee's discussion

7  with the independent auditors of the matters required to be discussed by SAS 61, and (3) the

8  Committee's review and discussion with the independent auditors of the independent auditors'

9  independence and the written disclosures and letter from the independent auditors required by

10  Independence Standards Board Standard No. 1.

11                      **FACTUAL ALLEGATIONS**

12            **Stock Option Grants to the Officer Defendants**

13      30.    At all times relevant hereto the Compensation Committee determined the salaries,

14  incentive compensation, and stock option award for executive officers of Intuit and administered the

15  Company's stock option plans.

16      31.    From 1997 to 2004, the Compensation Committee granted certain Intuit stock

17  options to the Officer Defendants as follows:[1]

| Officer | Purported Date of Grant | Exercise Price | Number of Options |
|---------|------------------------|----------------|-------------------|
| Bennett | 1/24/00 | $67.56 | 800,000 |
|         | 2/9/01 | $34.0625 | 500,000 |
|         | 9/25/02 | $44.32 | 225,000 |
|         | 7/30/04 | $37.44 | 225,000 |
| Santora | 5/18/00 | $26.125 | 100,000 |
|         | 8/1/00 | $35.00 | 40,000 |
|         | 4/24/01 | $29.38 | 40,000 |
| Cook | 8/1/00 | $35.00 | 100,000 |
| Stern | 8/1/00 | $35.00 | 40,000 |

27

28     [1] Exercise prices and numbers of options are not adjusted for the Company's 3-for-1 stock split effective September 30, 1999.

SHAREHOLDER DERIVATIVE COMPLAINT

| Officer | Purported Date of Grant | Exercise Price | Number of Options |
|---------|------------------------|----------------|-------------------|
| | 4/24/01 | $29.38 | 50,000 |
| | 9/25/02 | $44.32 | 37,500 |
| | 7/30/03 | $42.27 | 50,000 |
| | 7/29/04 | $37.44 | 60,000 |
| Larie | 11/27/00 | $47.6875 | 100,000 |
| | 4/24/01 | $29.38 | 50,000 |
| | 9/25/02 | $44.32 | 37,500 |
| | 7/30/03 | $42.27 | 50,000 |
| Norrington | 9/25/02 | $44.32 | 50,000 |
| | 7/30/03 | $42.27 | 100,000 |
| | 12/17/03 | $51.81 | 150,000 |
| Henske | 1/26/04 | $48.26 | 45,000 |
| | 7/29/04 | $37.44 | 25,000 |
| Heeger | 6/30/97 | $22.94 | 50,000 |
| Dunn | 6/30/97 | $22.94 | 50,000 |

32.    Pursuant to the terms of the Company's shareholder-approved stock option plans, the exercise price of options must be no less than the closing price of Intuit stock on the date of grant.

33.    Pursuant to APB 25, the applicable GAAP provision at the time of the foregoing stock option grants, if the market price on the date of grant exceeds the exercise price of the options, the company must recognize the difference as an expense.

34.    Pursuant to Section 162(m) of the Tax Code, 26 U.S.C. §162(m) ("Section 162(m)"), compensation in excess of $1 million per year, including gains on stock options, paid to a corporation's five most highly compensated officers is tax deductible only if: (i) the compensation is payable solely on account of the attainment of one or more performance goals; (ii) the performance goals are determined by a compensation committee comprised solely of two or more outside directors; (iii) the material terms under which the compensation is to be paid, including the performance goals, are disclosed to shareholders and approved by a majority of the vote in a separate shareholder vote before the payment of the compensation; and (iv) before any payment of

9

SHAREHOLDER DERIVATIVE COMPLAINT

1   such compensation, the compensation committee certifies that the performance goals and any other

2   material terms were in fact satisfied.

3          35.    In a striking pattern that could not have been the result of chance, each and every one

4   of the foregoing stock option grants was dated just before a significant rise in Intuit's stock price, as

5   demonstrated in the following chart:

| Purported Date of Grant | Exercise Price | Stock Price 15 Trading Days After Grant | % Rise in Stock Price After Grant |
|---|---|---|---|
| 6/30/97 | $22.94 | $25.00 | 9.0% |
| 1/24/00 | $67.56 | $69.00 | 2.1% |
| 5/18/00 | $26.125 | $42.62 | 63.1% |
| 8/1/00 | $35.00 | $47.62 | 36.0% |
| 11/27/00 | $47.6875 | $50.94 | 6.8% |
| 2/9/01 | $34.0625 | $45.12 | 32.5% |
| 4/24/01 | $29.38 | $34.04 | 15.9% |
| 9/25/02 | $44.32 | $45.07 | 1.7% |
| 7/30/03 | $42.27 | $44.58 | 5.5% |
| 12/17/03 | $51.81 | $52.28 | 0.9% |
| 1/26/04 | $48.26 | $49.36 | 2.3% |
| 7/29/04 | $37.44 | $38.65 | 3.2% |
| 7/30/04 | $37.44 | $38.65 | 3.2% |

17         36.    The reason for the extraordinary pattern set forth in the preceding paragraph is that

18   the purported grant dates set forth therein were not the actual dates on which the stock option grants

19   were made.  Rather, at the behest of the Officer Defendants, the Committee Defendants improperly

20   backdated the stock option grants to make it appear as though the grants were made on the dates

21   when the market price of Intuit stock was lower that the market price on the actual grant dates.  This

22   improper backdating, which violated the terms of the Company's shareholder-approved stock option

23   plans, resulted in option grants with lower exercise prices, which improperly increased the value of

24   the options to the Officers Defendants and improperly reduced the amounts the Officer Defendants

25   had to pay the Company upon exercise of the options.

26                          **Dissemination of False Financial Statements**

27         37.    As a result of the improper backdating of stock options, the Company, with the

28   knowledge, approval, and participation of each of the Individual Defendants:

                                        10

SHAREHOLDER DERIVATIVE COMPLAINT

1          a.     Violated the terms of the Company's shareholder-approved stock option

2 plans;

3          b.     Violated GAAP by failing to recognize compensation expenses incurred

4 when the improperly backdated options were granted;

5          c.     Violated Section 162(m) by taking tax deductions based on stock option

6 grants that were not payable solely on account of the attainment of one or more performance goals

7 and violated the terms of the Company's shareholder-approved stock option plans; and

8          d.     Produced and disseminated to Intuit shareholders and the market false

9 financial statements that improperly recorded and accounted for the backdated option grants.

10       38.     The Company, with the knowledge, approval, and participation of each of the

11 Individual Defendants, disseminated its false financial statements in, *inter alia*, the following Form

12 10-K filings:

13          a.     Form 10-K for fiscal year ended July 31, 1997, filed with the SEC on October

14 15, 1997 and signed by defendants Campbell, Santora, Cook, Brody, Doerr and Hallman;

15          b.     Form 10-K for fiscal year ended July 31, 2000, filed with the SEC on October

16 5, 2000 and signed by defendants Santora, Bennett, Brody, Campbell, Cook, Dubinsky, Doerr and

17 Hallman;

18          c.     Form 10-K for fiscal year ended July 31, 2001, filed with the SEC on October

19 5, 2001 and signed by defendants Santora, Bennett, Brody, Campbell, Cook, Dubinsky, Doerr and

20 Hallman;

21          d.     Form 10-K for fiscal year ended July 31, 2002, filed with the SEC on

22 September 25, 2002 and signed by defendants Santora, Bennett, Brody, Campbell, Cook, Dubinsky,

23 Doerr and Hallman;

24          e.     Form 10-K for fiscal year ended July 31, 2003, filed with the SEC on

25 September 19, 2003 and signed by defendants Bennett, Henske, Brody, Campbell, Cook, Dubinsky,

26 Doerr and Hallman; and

27

28

SHAREHOLDER DERIVATIVE COMPLAINT

1               f.         Form 10-K for year ended July 31, 2004, filed with the SEC on September

2  24, 2004 and signed by defendants Bennett, Henske, Brody, Campbell, Cook, Dubinsky, Doerr

3  Hallman, and Powell.

4         39.       Furthermore, from 1997 to 2004, the Company, with the knowledge, approval, and

5  participation of each of the Individual Defendants, for the purpose and with the effect of concealing

6  the improper option backdating:

7               a.         Disseminated to shareholders and filed with the SEC annual proxy statements

8  that falsely reported the dates of stock option grants to the Officer Defendants; and

9               b.         Filed with the SEC Form 4 filings that falsely reported the dates of stock

10  option grants to the Officer Defendants.

11         40.      On June 9, 2006, Intuit filed its quarterly report with the Securities and Exchange

12  Commission on Form 10-Q for the quarter ended April 30, 2006. Therein, the Company stated:

13       *Review of Option Grant Activities*

14       In light of recent reports in the media of public company stock option practices,
15  including a report from the Center for Financial Research and Analysis, Intuit has
     begun a voluntary review of our historical stock option grant activities and related
16  accounting treatment. Our board of directors has formed a special committee of
     independent directors to conduct this internal review with the assistance of
17  independent legal counsel and independent accounting support, and the review is
     underway and ongoing. In addition, subsequent to our initiation of this review, we
18  received a letter from the Securities and Exchange Commission regarding an
     informal inquiry, and we have informed the SEC staff of the status of our review.
19  We believe that the financial statements included in this report on Form 10-Q fairly
     present in all material respects the financial condition, results of operations and cash
20  flows of Intuit for the periods presented. However, additional facts may come to
     light once the review is complete, and there can be no assurance that we will not
21  determine that we need to change our accounting treatment of stock options granted
     in prior periods, which may have a material adverse effect on our results of
22  operations for those periods or other periods.

23  **THE INDIVIDUAL DEFENDANTS' BREACHES OF FIDUCIARY DUTIES**

24         41.      The Officer Defendants breached their fiduciary duties by:

25               a.         Colluding with the Compensation Committee Defendants to backdate stock

26  option grants;

27               b.         Colluding with the Audit Committee Defendants to violate GAAP and

28  Section 162(m);

SHAREHOLDER DERIVATIVE COMPLAINT

1  c. Colluding with the other Individual Defendants to produce and disseminate to

2 Intuit shareholders and the market false financial statements that improperly recorded and accounted

3 for the backdated option grants and concealed the improper backdating of stock options; and

4  d. Colluding with the other Individual Defendants to file false proxy statements

5 and false Form 4 filings in order to conceal improper backdating of stock options.

6  42. The Officer Defendants' foregoing misconduct was not, and could not have been, an

7 exercise of good faith business judgment. Rather, it was intended to, and did, unduly benefit the

8 Officer Defendants at the expense of the Company.

9  43. The Compensation Committee Defendants breached their fiduciary duties by:

10  a. Colluding with the Officer Defendants to backdate stock option grants;

11  b. Colluding with the Officer Defendants and Audit Committee Defendants to

12 violate GAAP and Section 162(m);

13  c. Colluding with the other Individual Defendants to produce and disseminate to

14 Intuit shareholders and the market false financial statements that improperly recorded and accounted

15 for the backdated option grants and concealed the improper backdating of stock options; and

16  d. Colluding with the other Individual Defendants to file false proxy statements

17 and false Form 4 filings in order to conceal improper backdating of stock options.

18  44. The Compensation Committee Defendants' foregoing misconduct was not, and could

19 not have been, an exercise in good faith business judgment. Rather, it was intended to, and did,

20 unduly benefit the Officer Defendants at the expense of the Company.

21  45. The Compensation Committee Defendants breached their fiduciary duties by:

22  a. Colluding with the Officer Defendants to violate GAAP and Section 162(m);

23  b. Colluding with the other Individual Defendants to produce and disseminate to

24 Intuit shareholders and the market false financial statements that improperly recorded and accounted

25 for the backdated option grants and concealed the improper backdating of stock options; and

26  c. Colluding with the other Individual Defendants to file false proxy statements

27 and false Form 4 filings in order to conceal the improper backdating of stock options.

28

13

SHAREHOLDER DERIVATIVE COMPLAINT

46. The Audit Committee Defendants' foregoing misconduct was not, and could not have been, an exercise in good faith business judgment. Rather, it was intended to, and did, unduly benefit the Officer Defendants at the expense of the Company.

47. As a direct and proximate result of the Individual Defendants' foregoing breaches of fiduciary duties, the Company has sustained millions of dollars in damages, including, but not limited to, the additional compensation expenses and tax liabilities the Company was required to incur and loss of funds paid the to Company upon exercise of options.

## DERIVATIVE AND DEMAND EXCUSED ALLEGATIONS

48. Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress defendants' breaches of fiduciary duties and unjust enrichment.

49. Plaintiff is an owner of Intuit common stock and has continually owned Intuit stock from July 1997.

50. Plaintiff will adequately and fairly represent the interests of the Company and its shareholders in enforcing and prosecuting its rights.

51. As a result of the facts set forth herein, plaintiff has not made any demand on the Intuit Board of Directors to institute this action against the Individual Defendants. Such demand would be a futile and useless act because the Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

52. The Board currently consists of 9 directors: Stratton D. Sclavos and defendants Bennett, Brody, Campbell, Cook, Dubinsky, Doerr, Hallman, Powell. The following directors are incapable of independently and disinterestedly considering a demand to commence and vigorously prosecute this action:

a. Bennett, because he is directly interested in the improperly backdated stock option grants complained of herein;

b. Brody, Hallman, Campbell and Doerr, because as members of the Compensation Committee, they directly participated in and approved the improper backdating of stock options, as alleged herein. Moreover, by colluding with the Officer Defendants and others, as

14

1    alleged herein, Brody, Dubinsky, Hallman, and Powell have demonstrated that they are unable or

2    unwilling to act independently of the Officer Defendants.

3         c.    Bennett, Brody, Campbell, Cook, Dubinsky, Hallman, Doerr, and Powell,

4    because as directors of the Company they directly participated in and approved the Company's filing

5    of false financial statements and other SEC filings, as alleged herein. Moreover by colluding with

6    the Officer Defendants and others, as alleged herein, Bennett, Brody, Campbell, Cook, Dubinsky,

7    Doerr, Hallman, and Powell have demonstrated that they are unable to or unwilling to act

8    independently of the Officer Defendants.

9         53.   Furthermore, demand is excused because the misconduct complained of herein was

10   not, and could not have been, an exercise of good faith business judgment.

11        54.   In addition, on August 16, 2006, Intuit announced that its own investigation its

12   option granting practices uncovered no evidence of "fraud or intentional wrongdoing in the

13   company's historical stock option granting practices."

## COUNT I

### AGAINST THE INDIVIDUAL DEFENDANTS
### FOR BREACH OF FIDUCIARY DUTY

17        55.   Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set

18   forth fully herein.

19        56.   As alleged in detail herein, each of the Individual Defendants had a fiduciary duty to

20   refrain from unduly benefitting themselves and other Company insiders at the expense of the

21   Company.

22        57.   As alleged in detail herein, the Officer Defendants breached their fiduciary duties by:

23        a.    Colluding with the Compensation Committee Defendants to backdate stock

24   option grants;

25        b.    Colluding with the Audit Committee Defendants to violate GAAP and

26   Section 162(m);

27

28

SHAREHOLDER DERIVATIVE COMPLAINT

1          c.        Colluding with the other Individual Defendants to produce and disseminate to

2   Intuit shareholders and the market false financial statements that improperly recorded and accounted

3   for the backdated option grants and concealed the improper backdating of stock options; and

4          d.        Colluding with the other Individual Defendants to file false proxy statements

5   and false From 4 filings in order to conceal the improper backdating of stock options.

6       58.   The Officer Defendants' foregoing misconduct was not, and could not have been, an

7   exercise of good faith business judgment. Rather, it was intended to, and did, unduly benefit the

8   Officer Defendants at the expense of the Company.

9       59.   As alleged in detail herein, the Compensation Committee Defendants breached their

10  fiduciary duties by:

11         a.        Colluding with the Officer Defendants to backdate stock option grants;

12         b.        Colluding with the Officer Defendants and Audit Committee Defendants to

13  violate GAAP and Section 162(m);

14         c.        Colluding with the other Individual Defendants to produce and disseminate to

15  Intuit shareholders and the market false financial statements that improperly recorded and accounted

16  for the backdated option grants and concealed the improper backdating of stock options; and

17         d.        Colluding with the other Individual Defendants to file false proxy statements

18  and false Form 4 filings in order to conceal the improper backdating of stock options.

19      60.   The Compensation Committee Defendants' foregoing misconduct was not, and could

20  not have been, an exercise of good faith business judgment. Rather, it was intended to, and did,

21  unduly benefit the Officer Defendants at the expense of the Company

22      61.   As alleged in detail herein, the Audit Committee Defendants breached their fiduciary

23  duties by:

24         a.        Colluding with the Officer Defendants to violate GAAP and Section 162(m);

25         b.        Colluding with the other Individual Defendants to produce and disseminate to

26  Intuit shareholders and the market false financial statements that improperly recorded and accounted

27  for the backdated option grants and concealed the improper backdating of stock options; and

28

SHAREHOLDER DERIVATIVE COMPLAINT

1    c.    Colluding with the other Individual Defendants to file false proxy statements

2    and false Form 4 filings in order to conceal the improper backdating of stock options.

3    62.    The Audit Committee Defendants' foregoing misconduct was not, and could not

4    have been, an exercise of good faith business judgment.  Rather, it was intended to, and did, unduly

5    benefit the Officer Defendants at the expense of the Company.

6    63.    As a direct and proximate result of the Individual Defendants' foregoing breaches of

7    fiduciary duties, the Company has sustained millions of dollars in damages, including, but not

8    limited to, the additional compensation expenses and tax liabilities the Company was required to

9    incur and loss of funds paid to the Company upon exercise of options.

10    <u>**COUNT II**</u>

11    <u>**AGAINST THE OFFICER DEFENDANTS FOR UNJUST ENRICHMENT**</u>

12    64.    Plaintiff incorporates by reference the above paragraphs above as if set forth fully

13    herein.

14    65.    The Officer Defendants were unjustly enriched by their receipt and retention of

15    backdated stock option grants, as alleged herein, and it would be unconscionable to allow them to

16    retain the benefits thereof.

17    66.    To remedy the Officer Defendants' unjust enrichment, the Court should order them

18    to disgorge to the Company all of the backdated stock options they received, including the proceeds

19    of any such options that have been exercised, sold, pledged, or otherwise monetized.

20    **WHEREFORE**, Plaintiff demands judgment, as follows:

21    A.    Against all of the Individual Defendants, and in favor of the Company, for the

22        amount of damages sustained by the Company as a result of the Individual

23        Defendants' breaches of fiduciary duties, and unjust enrichment;

24    B.    Ordering the Officer Defendants to disgorge to the Company all of the backdated

25        stock options they received, including the proceeds of any such options that have

26        been exercised, sold, pledged, or otherwise monetized;

27    C.    Granting appropriate equitable relief to remedy Defendants' breaches of fiduciary

28        duties;

17

SHAREHOLDER DERIVATIVE COMPLAINT

1    D.    Awarding to plaintiffs the costs and disbursements of the action, including

2          reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

3    E.    Granting such other and further relief as the Court deems just and proper.

4                          **JURY TRIAL DEMANDED**

5    Plaintiff demands a trial by jury.

6    Dated: September 26, 2006                 Timothy J. Burke
                                               STULL, STULL & BRODY
7

8
                                        By:
9                                              Timothy J. Burke
                                               10940 Wilshire Boulevard
10                                             Suite 2300
                                               Los Angeles, CA  90024
11                                             Tel:    (310) 209-2468
                                               Fax:    (310) 209-2087
12

13                                             Jules Brody
                                               Aaron L. Brody
                                               STULL, STULL & BRODY
14                                             6 East 45th Street
                                               New York,  NY 10017
15                                             Tel:    (212) 687-7230
                                               Fax:    (212) 490-2022
16

17                                             Counsel for Plaintiffs

18

19

20

21

22

23

24

25

26

27

28

                                 18

1

## VERIFICATION

2        I am an attorney for William G. Sclafani, who is a party to this action.  Plaintiff is absent

3    from the county where my offices are located, and is thus unable to verify this complaint.  I am

4    authorized to make this verification on plaintiff's behalf.  I have read the foregoing Complaint and

5    know its contents  I am informed and believe and on those grounds allege that the matters stated in

6    the Complaint are true.  I declare under penalty of perjury under the laws of the State of California

7    that the foregoing is true and correct

8

9        Executed on September 26, 2006 in the City of Los Angeles in the State of California.

10

11

12                         Timothy J. Burke

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SHAREHOLDER DERIVATIVE COMPLAINT**

# EXHIBIT B

1  BORIS FELDMAN, State Bar No. 128838 (boris.feldman@wsgr.com)
   IGNACIO E. SALCEDA, State Bar No. 164017 (isalceda@wsgr.com)
2  WILSON SONSINI GOODRICH & ROSATI
   Professional Corporation
3  650 Page Mill Road
   Palo Alto, CA 94304-1050
4  Telephone: (650) 493-9300
   Facsimile: (650) 565-5100
5
   Attorneys for Defendant
6  Michael R. Hallman

7              SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                       COUNTY OF SANTA CLARA

9
   WILLIAM G. SCLAFANI, Derivatively On     )   CASE NO.: 1-06-CV-071833
10 Behalf of Nominal Defendant INTUIT, INC., )
                                             )   NOTICE OF GENERAL
11            Plaintiff,                      )   APPEARANCE AND ACCEPTANCE
                                             )   OF SERVICE BY DEFENDANT
12     vs.                                   )   MICHAEL HALLMAN
                                             )
13 GREGORY J. SANTORA, SCOTT D. COOK,        )
   RAYMOND J. STERN, RICHARD W. IHRIE,       )
14 LORRIE M. NORRINGTON, ROBERT B.           )
   HENSKE, JAMES J. HEEGER, ERIC C.W.        )
15 DUNN, CHRISTOPHER W. BRODY,               )
   MICHAEL R. HALLMAN, DONNA L.              )
16 DUBINSKY, WILLIAM V. CAMPBELL, L.         )
   JOHN DOERR, DENNIS D. POWELL,             )
17 STEPHEN M. BENNETT;                       )
                                             )
18            Defendants,                     )
                                             )
19     - and -                               )
                                             )
20 INTUIT, INC.,                             )
                                             )
21            Nominal Defendant.             )
                                             )
22 _____)

23        PLEASE TAKE NOTICE that defendant, Michael R. Hallman, by and through his

24 undersigned attorneys, hereby appears before this Court and, accordingly, accepts service of

25 process in the above-captioned action, dated September 26, 2006, in the Superior Court for the

26 County of Santa Clara.  Cal. Code Civ. P. § 410.50(a)

27

28

1

2   Dated: September 28, 2006

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA  94304-1050


By: _____
        Ignacio Salceda

    Attorneys for Defendant
    Michael R. Hallman

---